IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHANE CHOMKO,

    Plaintiff,

v.

COTTRELL, INC., *et al.*;

    Defendants.                                    No. 15-cv-373-DRH-DGW

## ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

Now before the Court is plaintiff's motion to remand (Doc. 48). Defendant Cotrell, Inc. filed an opposition to the motion and plaintiff filed a reply (Docs. 49 & 50). Also pending are two of the defendants' motions to dismiss (Doc. 21 and Doc. 34) and plaintiff's motion to strike (Doc. 44). Plaintiff incorporates his responses to the pending motions to dismiss to the subject motion. Based on the following, the Court **GRANTS** the motion to remand (Doc. 48). All remaining motions are **DENIED** as moot.

### II. BACKGROUND

The following facts, taken primarily from the complaint, are assumed true at this stage of the proceeding.

On February 24, 2015, Shane Chomko ("Chomko"), an Illinois citizen, filed a ten count complaint against Cottrell, Inc. ("Cottrell"); Cassens Corporation; and A.C. Leasing Company ("A.C. Leasing") in the Madison County, Illinois Circuit Court (Doc. 1–1). Chomko's claims arise from a February 26, 2013 incident wherein he was operating a trailer and was injured during the operation of the rear loading skid.

At the time of the accident, Chomko was employed by Cassens Transport Company ("CTC"). CTC is not a party to this action. Both CTC and A.C. Leasing are subsidiaries of Cassens Corporation.

Additionally, at the time of the accident, Chomko was a union member and his union was party to a collective bargaining agreement with his employer, CTC. Cassens Corporation, in its capacity as a parent corporation, is a signatory to numerous CBAs, including the CBA in question.

Chomko alleges causes of action against Cassens Corporation, an Illinois citizen, for Negligence (Count IV); Negligence-Direct liability (Count V); Breach of Contract (Count VI); Consumer Fraud (Count VII); Promissory Estoppel (mislabeled equitable estoppel) (Count VIII), and Fraud (Count IX). Liability as to Cassens Corporation is premised, among other things, on the following: (1) Cassens Corporation is more than a mere holding company for its subsidiaries; (2) Cassens Corporation participated in the manufacture, marketing, and distribution of the subject product; (3) Cassens Corporation derived economic

benefit from placing the subject product in the stream of commerce; and/or (4) Cassens Corporation was in a position to eliminate the unsafe character of the subject product and/or to exert influence with regard to the safety of the subject product. With regard to the direct liability claim directed against Cassens Corporation, Chomko states he does not seek to pierce the corporate veil between Cassens Corporation and CTC.

Chomko alleges product liability claims (Counts I-III) against A.C. Leasing, also an Illinois citizen, on the grounds that A.C. Leasing is the owner, lessor and/or distributor of the car hauler trailer on which Chomko was injured.

Chomko alleges product liability claims (Counts I – III) against Cottrell, a Georgia citizen, on the grounds that it manufactured the car hauler trailer on which Chomko was injured.

On April 3, 2015, Cottrell removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446; 29 U.S.C. §185 and The Labor Management Relations Act (29 U.S.C. § 141, et. seq.) (Doc. 1).

Although Chomko and defendants Cassens Corporation and A.C. Leasing are citizens of Illinois, Cottrell argues diversity exists because the non-diverse defendants were fraudulently joined. Additionally, although the complaint contains no claim for relief based on federal law, Cottrell argues federal question jurisdiction exists. Cottrell contends Chomko's claims against Cassens Corporation are, in reality, claims under § 301 of the Labor-Management

Relations Act ("LMRA"), 29 U.S.C. § 185(a). This is so, Cottrell argues, because Chomko's complaint implicates the bargained-for working conditions of the CBA and implicates duties arising out of the CBA and/or requiring interpretation of the CBA.

### III. REMOVAL STANDARD

A defendant may remove a case only if a federal district court would have original jurisdiction over the action. *See* 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Statutes providing for removal are construed narrowly, and doubts about removal are resolved in favor of remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir.2009). (*citing Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993)).

### IV. FEDERAL QUESTION JURISDICTION

#### A. Legal Authority

In general, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The usual test of whether an action arises under federal law for purposes of Section 1331 is the "well-pleaded complaint" rule, which provides generally that a

case arises under federal law within the meaning of the statute only when federal law appears on the face of a plaintiff's complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001). In other words, "a claim 'arises under' the law that creates the cause of action." *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007) (citing *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257 (1916)). In a limited class of cases, however, an action may arise under federal law within the meaning of Section 1331, even if the complaint in the case asserts no claim for relief under federal law, where state law is "completely preempted" by federal law. Complete preemption occurs when "the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Nelson v. Stewart*, 422 F.3d 463, 466-67 (7th Cir. 2005) (internal quotations omitted). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. In such situations, the federal statute . . . not only preempt[s] state law but also authorize[s] removal of actions that sought relief only under state law." *Id.* (citation omitted).

The LMRA is one of the few federal statutes that completely preempts state law so as to permit removal of state-law claims to federal court. *See Avco Corp. v. Aero Lodge No. 735 Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S.

557, 559-60 (1968). Section 301 of the LMRA (also known as the Taft-Hartley Act), 29 U.S.C. § 185(a) provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Although a state law cause of action completely preempted by § 301 of the LMRA need not be for breach of contract, it must be "inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). A claim is not completely preempted if it simply "relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement." *Id*. at 220. Instead, "for preemption to exist, resolution of a claim must require interpretation of a CBA, not a mere glance at it." *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 289 (7th Cir.2001) (en banc). Determining whether a claim requires interpretation of a CBA necessitates a "case-by-case analysis of the state-law claim as it relates to the CBA." *Id*.

### B. Analysis

As noted above, Chomko was a member of a union at the time of his accident and his union was a party to a collective bargaining agreement with his employer, CTC. Cassens Corporation, in its capacity as a parent corporation, is a signatory to numerous CBAs, including the CBA in question. Nothing in the

complaint references the CBA or any basis for federal jurisdiction. Nonetheless, Cottrell asserts, the claims brought against Cassens Corporation are, in reality, claims under § 301 of the LMRA.

In support of its position, Cottrell frequently cites to *Schuring v. Cottrell,* 2014 WL 585295 (N.D. Ill. Feb. 14, 2014) (J., Kendall).[1] In *Schuring,* the district court concluded the plaintiff's allegations against Cassens Corporation indicated it had breached duties created by the CBA. Accordingly, the district court treated the plaintiff's state-law claims as federal claims and found that removal was appropriate.

First, the Court notes that *Schuring* is not controlling here. Second, the Court agrees with Chomko in that *Schuring* is distinguishable. Here, Chomko's counts against Cassens Corporation all reference Cassens Corporation's Loss Control Program. Nothing in the complaint indicates that the Loss Control Program is tied to the CBA or that assessing Cassens Corporation's duties in relation to the Loss Control Program require interpretation of the CBA. Third, the *Schuring* decision is questionable as the court's preemption decision appears to be based on a need to *consult* the CBA to determine its applicability to Cassens Corporation.[2] Indeed, after concluding that federal question jurisdiction existed,

---

[1] In *Schuring*, the plaintiff's employer was a subsidiary of Cassens Corporation. Cassens Corporation was a signatory, in its capacity as a parent corporation, to the CBA between the plaintiff's union and the plaintiff's employer. The plaintiff's employer was not a party to the suit.
[2] The district court states that preemption is warranted because determining whether certain CBA provisions apply to Cassens will require "interpretation and application of the CBA." However, the court seems to be referring to the mere need to *consult* the CBA rather than the need to interpret it.

the *Schuring* court declined to dismiss claims against Cassens Corporation on the basis of complete preemption stating that "legal and factual determinations" remained regarding whether the CBA applied to Cassens Corporation. As noted above, reviewing or consulting a CBA for the purpose of deciding preemption is not in itself "interpretation" warranting preemption; preemption is only warranted when resolution of a state-law claim depends on an interpretation of the CBA. *See Foy v. Pratt Whitney Group,* 127 F.3d 229, 234 (2d Cir. 1997).[3]

Chomko argues that, since 2012, courts have rejected Cottrell's complete preemption argument on at least thirty occasions. *See* Docs. 48-1 through 48-27, 48-34, and 48-35. Cottrell contends these cases are distinguishable because they did not analyze claims against Cassens Corporation and Cottrell's preemption argument in the instant case relates only to the claims against Cassens Corporation. With regard to Chomko's argument, the Court notes that many of the cases referenced by the plaintiff did not address preemption as to Cassens Corporation. Further, many of the decisions were based, in part, on the fact that Cottrell was not a signatory to the CBA in question. With regard to Cottrell's argument, the Court notes that Cassens Corporation was a party in at least three of the referenced cases. *See* Doc. 48-1, Doc. 48-3, and Doc. 48-8.

---

[3] In his reply, Chomko admonishes Cottrell for failing to advise the Court that "on September 29, 2015, *Schuring* concluded the plaintiffs' claims were <u>not</u> completely preempted by the LMRA, and denied Cottrell's motion for judgment on the pleadings…" (Doc. 50). Cottrell's motion for summary judgment was subsequently rejected by the *Schuring* court. However, the referenced order addressed preemption as to Cottrell and not Cassens Corporation. Accordingly, it does not necessarily apply to Cottrell's arguments with respect to Cassens Corporation in the instant case.

The above is an example of both parties' tendency to present arguments based on a selective sampling of case law. Although both parties are guilty of presenting selective case summaries, some of Cottrell's arguments border on being misleading. The Court pauses here to admonish both parties – but in particular Cottrell – for their conduct.

That being said, after reviewing the relevant material, the Court finds the state law claims pled by Chomko are not completely preempted by § 301 of the LMRA, 29 U.S.C. § 185(a). Chomko is not claiming any of the defendants violated any of the CBA provisions. Further, the Court finds adjudication of Chomko's claims against Cassens Corporation is dependent on state law and does not require interpretation of the subject CBA. Therefore, there is no basis for federal question jurisdiction.

## V. DIVERSITY JURISDICTION AND FRAUDULENT JOINDER

### A. Legal Authority

Diversity jurisdiction requires that the plaintiffs and defendants be completely diverse, that is, no plaintiff can be a citizen of the same state as any defendant. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir.1992). Under the fraudulent joinder doctrine, a plaintiff may not avoid federal diversity jurisdiction by suing a non-diverse defendant simply to destroy diversity jurisdiction where there is no real claim against that defendant. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir.1999); *Gottlieb v. Westin Hotel Co.*, 990

F.2d 323, 327 (7th Cir.1993). The fraudulent joinder doctrine allows a court to disregard the citizenship of any fraudulently joined defendant when determining whether complete diversity exists. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir.2009). The court can then assume jurisdiction over the removed case, dismiss any non-diverse fraudulently joined defendant from the suit and retain jurisdiction over the case. *Id*.

The fraudulent joinder doctrine applies when a defendant demonstrates that "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos*, 959 F.2d at 73; *accord Schur*, 577 F.3d at 764.2 If there is "any reasonable possibility" that the plaintiff may prevail against a defendant, the defendant is not fraudulently joined. *Schur*, 577 F.3d at 764 (*citing Poulos*, 959 F.2d at 73). The defendant's burden is heavy, possibly even heavier than his burden with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Schur*, 577 F.3d at 764.

Thus, in the instant case, the Court must ask whether, after resolving all issues of fact and law in Chomko's favor, there is any reasonable possibility that Chomko might prevail against either non-diverse defendant (Cassens Corporation or A.C. Leasing). Finding that Chomko may prevail on a single claim against either non-diverse defendant is sufficient grounds for finding that diversity jurisdiction is lacking.

### B. Analysis

#### 1. Cassens Corporation

In the instant case, Cottrell's argument that there is no possibility a state court could find Cassens Cororation is liable is disproven by *Graham v. Bostrom Seating, Inc.*, 398 Ill.App.3d 302, 337 Ill.Dec. 84, 921 N.E.2d 1222 (Ill. App. Ct. 2010). In *Graham*, the Illinois Appellate Court reversed summary judgment in favor of a Cassens Corporation subsidiary that claimed its role in the purchase of a car-hauling trailer was merely "clerical and passive." In reversing summary judgment, the Illinois Appellate Court stated "there are circumstances where a parent or holding company, or a 'sister' subsidiary company for that matter, could be held strictly liable." *Id.* at 312. Citing to *Ogg v. City of Springfield*, 121 Ill.App.3d 25, 32–33, 76 Ill.Dec. 531, 458 N.E.2d 1331 (Ill. App. Ct. 1984), the *Graham* Court noted that a parent company *is liable* for loss caused by a product when that entity: (1) participated in the manufacture, marketing, and distribution of an unsafe product; (2) derived economic benefit from placing it in the stream of commerce; or (3) was in a position to eliminate the unsafe character of the product. *Id.* The Appellate Court also cited to *Forsythe v. Clark USA, Inc.* stating as follows: "Where there is evidence sufficient to prove that a parent company mandated an overall business budgetary strategy and carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent company could face liability." *Id.* at 313. Finally, in disagreeing with the

dissent, the Illinois Appellate Court stated "all that is required is that [the Cassens Corporation subsidiary] had the ability to or was in a position to exert influence, not that [the Cassens Corporation subsidiary] actually exerted any influence." *Id.* Following *Graham*, at least one Illinois court has denied Cassens Corporation's motion for summary judgment as to claims for direct liability and in concert liability (Doc. 48-47).

Cottrell does not address or attempt, in any way, to distinguish *Graham.* Instead, pretending as if the decision is non-existent, Cottrell makes numerous arguments premised on trial court decisions issued prior to the *Graham* decision. This is another example of the selective, if not misleading, argument often presented by Cottrell.

In the instant case, Chomko alleges that Cassens Corporaton: (1) participated in the manufacture, marketing and distribution of an unsafe product; (2) derived economic benefit from placing it into the stream of commerce; and (3) was in a position to eliminate the unsafe character of the product trailer. If Chomko's allegations are true, which the Court must assume in its fraudulent joinder analysis, there is a reasonable possibility that Cassens Corporation could be subject to liability, at least with respect to Chomko's claims for Negligence (Count IV), Negligence-Direct liability (Count V), and to the extent Chomko has asserted a claim for In Concert Liability. In fact, the *Schuring* decision, relied on so heavily by Cottrell with respect its preemption argument, held that practically identical claims asserted against Cassens Corporation were sufficient to proceed

on a theory of direct participant liability and denied Cassens Corporation's motion to dismiss as to these claims. *Schuring*, 2014 WL 585295, *3 (N.D. Ill. Feb. 14, 2014) (J. Kendall).[4]

Remand is required if any one of the claims against Cassens Corporation is possibly viable. Accordingly, based on the above, the Court need not assess the viability of the remaining claims asserted against Cassens Corporation. The Court finds that Cottrell has failed to meet its heavy burden of showing that Chomko has no reasonable possibility of success against Cassens Corporation. Therefore, the Court finds that Cassens Corporation was not fraudulently joined for the sole purpose of destroying this Court's diversity jurisdiction, and consequently this Court does not have diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over this case.

**2. A.C. Leasing**

The presence of a single nondiverse defendant is sufficient to defeat diversity jurisdiction. Accordingly, in light of the Court's finding as to Cassens Corporation, the Court need not assess the fraudulent joinder argument as to A.C. Leasing.

---

[4] Liability as to Cassens Corporation may be established without piercing the corporate veil. *See Forsythe v. Clark USA, Inc.,* 224 Ill.2d 274 (2007) ("Direct participant liability, as we now recognize it, does not rest on piercing the corporate veil such that the liability of the subsidiary is the liability of the parent."). The Court further notes that *Forsythe v. Clark USA, Inc.,* 224 Ill.2d 274, 296-299 (2007), defeats Cottrell's exclusive remedy argument.

## VI. REQUEST FOR COSTS

Chomko asks the Court to award him his attorneys' fees and costs in this action pursuant to 28 U.S.C. § 1447(c). The Supreme Court, in *Martin*, found that a prevailing plaintiff was only entitled to attorneys' fees under § 1447(c) if the defendant "lacked an objectively reasonable basis for seeking removal." *Martin*, 542 U.S. at 141; *see also Lott v. Pfizer, Inc.*, 492 F.3d 789, 792 (7th Cir. 2007). Although ultimately Court disagreed with Cottrell's arguments, it declines to award fees and costs under the above standard.

## VII. CONCLUSION

For the reasons discussed herein, the Court **REMANDS** this case to the Circuit Court of Madison County, Illinois. All remaining motions are **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

Signed this 21st day of December, 2015.

Digitally signed by Judge David R. Herndon
Date: 2015.12.21 14:12:23 -06'00'

**United States District Judge**